IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–02469–KMT

STEPHEN H. ADAMS,

     Plaintiff,

v.

GERALD JONSGAARD, Aurora Police Sgt. Jonsgaard, individual capacity,

     Defendant.

---

## ORDER

---

     This case comes before the court on "Defendant Gerald Jonsgaard's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Doc. No. 38 [Mot.], filed July 25, 2017). Plaintiff did not file a response.

## STATEMENT OF THE CASE

     In his Complaint, Plaintiff alleges on December 15, 2013, he drove to his girlfriend's house, and when he arrived there an Aurora police officer was sitting behind his vehicle with his lights off. (Doc. No. 6 [Compl.] at 4.) Plaintiff states he rolled down his window and was asked by a screaming officer if Plaintiff had any weapons in his vehicle. (*Id.*) Plaintiff states he responded that he did have a weapon, and then he put the butt end of his weapon out of the window. (*Id.*) The police officer told Plaintiff to put the weapon back inside the vehicle, and Plaintiff complied. (*Id.*) Plaintiff then tried to exit his vehicle and was told to stay inside. (*Id.*) Plaintiff alleges he suddenly was surrounded by twenty to twenty-five Aurora police officers,

and Defendant Jonsgaard "ordered the officers to discharge their weapons into [Plaintiff's] vehicle." (*Id.*)  Plaintiff alleges the officers fired fifty-four bullets into his vehicle, one of which struck him in his left knee.  (*Id.* at 5.)

Plaintiff's remaining claim is a claim for excessive force, pursuant to 42 U.S.C. § 1983, asserted against Defendant Jonsgaard.

## UNDISPUTED FACTS

1.      During an incident occurring on December 15, 2013, four Aurora Police Department Officers (Officer Petering, Officer Garcia, Officer McCants, and Officer Strickland [sic]) fired their duty weapons at Plaintiff.  (Compl. at 4.)

2.      As the incident resulted in an officer involved shooting for the Aurora Police Department, pursuant to protocol, the investigation was reviewed by the Office of the District Attorney, Seventeenth Judicial District.  (Mot., Ex. B, Letter to Chief Daniel J. Oates, dated April 4, 2014, regarding "The officer involved shooting of Stephen Harrold Adams, DOB 6/10/1965, on December 15, 2013" ["DA Letter"].)

3.      The Aurora Police Department's involvement in the incident giving rise to this action began with an incoming 911 emergency phone call at approximately 4:54 a.m., from a Shunronica Doucette.  (*Id.* at 1; Ex. C, audio recording of 911 phone call.)

4.      Ms. Doucette told Aurora Dispatch that Plaintiff was at her residence, located at 1742 Jamaica Street, with a double-barrel shotgun, had broken out a window on her home, and two days prior he had fired the same shotgun at her house.  (Ex. C.; Ex. M, Aurora Police Department, General Offense Hardcopy, narrative of Officer MacDonald, at 2.)

5. During that same 911 phone call, Ms. Doucette also stated, "he's going to kill me." (Ex. C.)

6. Dispatch aired to officers that there was an armed party, a male with a gun. (Ex. D, audio recording of dispatch.)

7. It was further aired that the suspect [Plaintiff] had a double-barrel shotgun and had busted out windows. (Ex. E, audio recording of dispatch.)

8. Plaintiff admitted that on December 15, 2013, he was in possession of a shotgun or sawed-off shotgun. (Ex. A, Req. for Admis. No. 3.)

9. Aurora Police Officers responded to the scene and located the suspect [Plaintiff] driving in his vehicle. (Ex. B at 1–2; Ex. Q, Aurora Police Department, General Offense Hardcopy, narrative of Officer Olson, at 1.)

10. The suspect [Plaintiff] returned to 1742 Jamaica Street, whereupon the initial responding Aurora Police Officers [Olson and Stricklin] "activated the emergency lights on their patrol cars." (Ex. B at 2.)

11. Aurora Police "Officer Olson got out of his patrol car and immediately began giving loud verbal orders to Mr. Adams [Plaintiff] to exit [the white Suburban vehicle he was in] with his hands in the air." (*Id.*)

12. Officer Stricklin also began issuing orders and making requests for Plaintiff to step away from the vehicle and for Plaintiff to put his hands in the air. (*Id.*; Ex. R at 19–23; Ex. T, Supplemental Report of Detective Ingui.)

13. Plaintiff failed to comply with the officers' orders. (Ex. B at 2.)

14. During the encounter, the Plaintiff became more agitated. (*Id.*)

15. Plaintiff began making demands of the officers and stated if they did not comply with his demands that things would "end badly." (*Id.*; Ex. F, audio recording of dispatch.)

16. During this time, when Officers Olson and Stricklin were giving Plaintiff Orders and Plaintiff started to make threats, additional Aurora Police Officers arrived on scene. (*Id.*; Ex. M at 1.)

17. During the encounter Plaintiff kept his vehicle running. (Ex. B at 3; Ex. G, audio recording of dispatch.)

18. Plaintiff had a sawed-off shotgun. (Ex. M at 2; Ex. N, Discovery Requests sent to Plaintiff, including Admissions to which Plaintiff failed to respond, Req. for Admis. No. 3.)

19. Plaintiff pointed the shotgun out of the window of the vehicle and was threatening officers with the shotgun. (Ex. H and I, audio recordings of dispatch; Ex. M at 3; Ex. Q at 2.)

20. Plaintiff continued to point the gun out the window and make threats to the officers. (Ex. B at 3, 4; Ex. J, audio recording of dispatch; Ex. O, Aurora Police Department, General Offense Hardcopy, narrative of Officer Gallimore; Ex. P, narrative of Officer Sanderson, at 1.)

21. Plaintiff admits that on December 15, 2013, he pointed the shotgun or sawed-off shotgun at police officers. (Ex. A, Req. for Admis. No. 4.)

22. Based on Plaintiff's actions pointing the shotgun at officers, Sergeant Jonsgaard told officers if the Plaintiff pointed the gun at someone or is threatening the officers with the shotgun the officers should "do what you have to do." (Ex. K, audio recording of dispatch; Ex. R at 18 and 26; Ex. S, Supplemental Report of Sergeant Smith.)

23.     Plaintiff continued to fail to comply with the officers' orders to get out of the vehicle, turn off the vehicle, and show his hands.  (Ex. P at 1; Ex, B; Ex. R; Ex. T.)

24.     Dispatch aired information concerning Plaintiff's violent history and a prior assault on peace officers.  (Ex. L, audio recording of dispatch.)

25.     Plaintiff admits that in Arapahoe County District Court case number 2003CR314 he was previously convicted of a charge of Second Degree Assault on a Peace Officer, Disarming a Peace Officer (attempt) and Resisting Arrest.  (Ex. A, Req. for Admis. No. 5.)

26.     Based on Plaintiff's actions, at the time the four Aurora Police Officers fired their weapons, the Aurora Police Officers believed that Plaintiff was going to shoot at the officers.  (Ex. B at 4.)

27.     The length of the contact between the first Aurora Police Department Officers who responded to the scene and the time that officers fired their duty weapons was approximately 43 minutes.  (*Id.*)

28.     Each of the four Aurora Police Department Officers (Petering, Garcia, Stricklin, McCants) who fired their duty weapons were interviewed with respect to the incident.  (Ex. R, Aurora Police Department, General Offense Hardcopy, Officer-Involved Use of Deadly Force, Detective Craig J. Appel, Summary of the Investigation, Involved Officers' Interviews, at 14–28.)

29.     None of the four Aurora Police Department Officers who fired their duty weapons as a result of the incident stated they did so as a result of anything said by Sergeant Jonsgaard.  (Ex. R.)

30.     Each one of the four Aurora Police Department Officers stated that he fired his duty weapon during the incident as a result of being in fear for his life and the lives of their fellow officers.  (*Id.*)

31.     At no time during the incident did Sergeant Jonsgaard fire any weapon at the Plaintiff or utilize force of any kind.  (*Id.*)

32.     Plaintiff admits that charges were brought against him stemming from this incident on December 15, 2013.  (Ex. A, Req. for Admis. No. 1.)

33.     Plaintiff admits that he entered into a plea agreement for the criminal charge of Assault in the Second Degree, a class 4 felony, in Adams County District Court case number 2013CR3601, with Aurora Police Officers Petering, McCants, Stricklin, and Garcia as the named victims.  (*Id*, Req. for Admis. No. 2.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper

disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the

evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*,

477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible

evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The

factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Because Plaintiff is

proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them

to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d

1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21

(1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal

pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's

version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304,

1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

*Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

**ANALYSIS**

*1.      Qualified Immunity*

Plaintiff's remaining claim is against Defendant Jonsgaard in his individual capacity. (*See* Doc. No. 29.)  Qualified immunity is an affirmative defense against § 1983 damage claims available to public officials sued in their individual capacities.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The doctrine protects officials from civil liability for conduct that does not violate clearly established rights of which a reasonable person would have known.  *Id.*  As government officials at the time the alleged wrongful acts occurred, being sued in their individual capacities, the defendants are entitled to invoke a qualified immunity defense to Plaintiff's malicious prosecution claim.  *See id.* at 231; *Johnson v. Jones*, 515 U.S. 304, 307 (1995) (noting that police officers were "government officials—entitled to assert a qualified immunity defense").  In resolving a motion to dismiss based on qualified immunity, a court looks at: "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted).  Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part.  *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).  Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

### a. Fourth Amendment Violation

When an officer moves for qualified immunity on an excessive force claim, "a plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007). *Accord Mata v. City of Farmington*, 791 F.Supp.2d 1118, 1137–38 (D.N. M. 2011). An excessive force claim "must . . . be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court has long held that all claims of excessive force in the context of an arrest or detention should be analyzed under the Fourth Amendment's reasonableness standard. *See Graham*, 490 U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."). The Supreme Court recognizes that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. Consequently, "the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). A court must judge the reasonableness of a particular use of force from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . That perspective includes an examination of the information possessed by the [officer]." *Weigel v.*

*Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008) (citations omitted) (internal quotation marks omitted).

### 1. *Personal Participation*

Defendant argues Plaintiff fails to allege his participation in an excessive force violation. (Mot. at 11–17.)

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Plaintiff alleges only that Defendant Jonsgaard "ordered the [Aurora Police Officers] to discharge their weapons into [Plaintiff's] vehicle." (Compl. at 4.) However, Plaintiff does not allege that Defendant Jonsgarrd fired a weapon himself, and the undisputed record shows that Defendant Jonsgaard did not, himself, use any force against Plaintiff. (Exs. B & R.) Thus, Defendant Jonsgaard is not liable for a direct violation of Plaintiff's constitutional rights.

Plaintiff appears to hold Defendant Jonsgaard liable on a supervisory-liability theory. In a § 1983 lawsuit, "[s]upervisory liability 'allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution.'" *Brown v. Montoya*, 662 F.3d 1152, 1163–64 (10th Cir. 2011) (second alteration in original) (omissions in original) (quoting *Dodds*, 614 F.3d at 1199). This does not equate to "liability under a theory of respondeat superior." *Id.* at 1164; *accord Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

A plaintiff arguing for the imposition of supervisory liability "therefore must show an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v.*

*Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quoting *Schneider*, 717 F.3d at 767).  The requisite

showing of an "affirmative link" between a supervisor and the alleged constitutional injury has

"[come] to have three related prongs: (1) personal involvement, (2) sufficient causal connection,

and (3) culpable state of mind."  *Dodds*, 614 F.3d at 1195; *accord Schneider*, 717 F.3d at 767.

"[*Ascroft v.*] *Iqbal*[, 556 U.S. 662 (2009), holds that at least for some constitutional violations

requiring specific intent, a supervisor cannot be liable for a subordinates' violations unless the

supervisor possessed that intent as well."  *Id.* at 1212.  However, "where the constitutional

violation does not require specific intent, the supervisor 'is only liable for his or her own

misconduct.' "  *Iqbal*, 556 U.S. at 677.

Plaintiff has failed to show Defendant Jonsgaard was personally involved in the alleged

constitutional violation.  Moreover, this court has held that Plaintiff is barred from alleging

excessive force against Aurora Police Officers Petering, Garcia, Stricklin, and McCants, as such

a claim would necessarily invalidate Plaintiff's guilty plea and sentence in his criminal case

related to this same incident.  *See Heck v. Humphrey*, 512 U.S. 477 (1994).  (*See* Doc. No. 29 at

4–8.)  Accordingly, Plaintiff cannot assert this alleged excessive force as a basis for his claim

against Defendant Jonsgaard.  *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151–52 (10th

Cir. 2006) ("In order to establish a § 1983 claim against a supervisor for the unconstitutional acts

of his subordinates, a plaintiff must first show the supervisor's subordinates violated the

constitution.")  Finally, because an excessive force claim does not require specific intent, *see*

*Cortez*, 478 F.3d at 1128, Defendant Jonsgaard is liable only for his own misconduct, and

Plaintiff has failed to show that Defendant Jonsgaard was directly involved with the alleged

excessive force.

Thus, Defendant Jonsgaard is entitled to summary judgment on Plaintiff's excessive force claim. Additionally, because Plaintiff has failed to show that Defendant Jonsgaard violated his constitutional rights, he is entitled to qualified immunity. *Leverington*, 643 F.3d at 732.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that **"**Defendant Gerald Jonsgaard's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Doc. No. 38) is **GRANTED**.

Dated this 13th day of March, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge